Very well, we're now going to argue about our last case of the day, which is Rhapsody International v. Lowery. And I believe Ms. Kramer, please. Good morning, Your Honors, and may it please the Court, I am Karen Kramer. I'm here with my colleague, William Adams, and together we represent Rhapsody International. The issue, as the Court knows, is whether the District Court abused its discretion by awarding class counsel fees in an unprecedented multiple of 30 times the class relief. The District Court's justification for doing so was equally unprecedented. It was based on his decision to ensure, quote, adequate compensation, quote, to counsel. That standard is not found in any opposite case. If affirmed, this award will break really new ground. And I think it's fair to say that an opinion allowing fees that are multiple of the class relief will be the shot heard around the world in the class action bar. Well, I understand you disagree with the District Court's decision with respect to the award. What do you think this Court should have done? Or what do you think what particular rule we should adopt in this instance, whether it be a negative multiplier or whatever it may be? What's your proposed solution to this? So let me just say that I think the line has been bright enough out there in the law that for decades this hasn't happened. I mean, it occasionally happens in the District Court, but the appellate court always sends it back, so this should never have happened. And I think what needs to happen in this case is that the fee award should be remanded and the District Court should be instructed to enter a fee award that is proportional to and not a multiple of the class relief. That's a Kim versus Allison analysis, right? Among others, but Kim is the most recent case. It should be capped basically at $52,000. Well, that's not what I think. I think that is what the cases say, and that is what the cases illustrate. We've asked repeatedly for plaintiffs to show us a single case where the fee has exceeded the class relief, and they've never come up with a single one. So this is how it's been for decades, and this is how it is in the plaintiff's practice. I'm sorry. What does the record say, and did either the magistrate judge or the district judge make any determination about whether this suit had any role or the collection of suits had any role on the settlement with the publishing association? I don't think the magistrate judge or the district court judge really made a finding about that, but I think the record is absolutely clear. The settlement with the publishers association, the industry group, was finalized before we even had our MOU, our memorandum of understanding in place. It was finalized in April 2017, and we had been telling plaintiffs, and it was in the record, that this suit was in process. Was it evident that the filing of this suit and similar suits in other courts was an impetus or played any kind of role in bringing about that settlement? No evidence of that in the record, and the record is to the contrary. We told them from the minute they filed this lawsuit, literally, they filed it in March. We appeared in April, I think in June of 2016. We told them that there was the settlement in process that was going to decimate their class, and they just kept plowing on. And I might point out that, as their complaint shows, their plaintiff is very engaged in the music publishing industry. So, you know, these settlements were going on with many of the streaming companies, and they knew this, and they just continued to push it forward, even though we told them over and over again they were cutting off their nose. Is that in the record anywhere? Yes. It is in the record that, well, it's in the record in many places. Just a few of the ones I can give you of us telling them about the suit is Excerpts of Record 25 at 28, ER 194 at 195 through 96, ER 109, Paragraph 2, and I think those are just a few. But, yes, we did tell them. So, and even if it were true that they were the impetus, which they were not, that was never mentioned by the district court or by the magistrate judge, and there certainly was never any valuation of that for purposes of determining whether this fee award is justified. So, you know, I think our request at the time. Is it a fair reading of the record that that larger settlement sort of wiped up a lot of claims that might have otherwise been filed here and was one of the things that accounted for such a low claims made? Absolutely. And, again, it's in those sites that I gave you. But, ultimately, the settlement with the National Music Publishers Association had a 97% opt-in rate. So, it swept up most of the potential class. And, again, as soon as we knew what the opt-in rate, we told them. But, there had been a previous settlement with Spotify in which the opt-in rate was also very high in the 90s. So, they knew this was going on. And, I think, well, I can't speak as to why they continued to. I understand the technological challenges that would be presented here, which was what would have led to the legislative changes. But, would it be fair to say that within the confines of the old law, this copyright infringement would be considered willful? That's never been addressed in this case. I mean, they made those allegations. They made every allegation. But, you know. You were using the material and you didn't have a license. So, that seems pretty willful. Well, it's not clear that we didn't have licenses. We never got an opportunity to put forward our defenses. And, licenses, whether you have a license with a particular publisher, is actually very complicated because entities can be wrapped inside other entities who are wrapped inside other entities. And, one of those entities may have a license. So, it was going to be way more expensive for us to figure out who had licenses than to simply settle the case, which is what we tried to do from the get-go. And, in fact, what happened was we settled the case with respect to relief for the class. That happened very quickly, within a year. And, the case just continued on in the service of trying to get higher attorney's fees. But, there's no. You haven't argued that the baseline Lodestar number that reflects some of that dragging out of time should be reduced. You're just arguing over a multiplier, a negative multiplier. Well, yes. We're not. Although, we don't agree with the Lodestar for lots of reasons. We opted not to appeal it because we believe this was really the strongest argument based on the law. And, the Lodestar calculation is sort of a factual matter. I'm sorry, Your Honor. But, yeah. So, we're not questioning the Lodestar. But, we're not only talking about a negative multiplier. I mean, yes, we think a negative multiplier is one way to go about it. But, in some of the cases, they just simply reduce the amount of fees to be proportional to or consistent with what the class received. It starts to look like punitive damages where we're going to have ratios, one-to-one ratios for attorney's fees can't go over. And, I'm just wondering where the Copyright Act authorizes fees. Does it contemplate that kind of a one-to-one cap? So, the Copyright Act was never argued in this case as the basis for fees. It's asserted by the district court in its ruling. Not the district court. The magistrate. The magistrate judge referred to it. But, if you look at her actual opinion, she never analyzes fees under the Copyright Act. She simply says, Rule 23H allows you to get fees if the parties agree or if it's provided for by statute. And then, she says, the parties agree and the Copyright Act allows. But then, she goes on to analyze it under other cases entirely, not any copyright case. The only claim to complain was a copyright claim, correct? It was, but they did not move for fees. So, it's clearly one of the sources of authority for fees is the Copyright Act. No, well, it would be, but they didn't raise it. They never raised it. The first time they raised it is in their answering brief on this appeal. And, in fact, when the magistrate judge mentioned it in her order, we then moved for de novo review of her report and recommendation. And, we pointed out that she raised it, but it wasn't an issue in the case. The plaintiffs hadn't raised it. Plaintiffs didn't dispute that. And, they themselves didn't pick it up in their own motion for de novo review. So, it would be really utterly unfair to find these fees valid under the Copyright Act when we've never had the opportunity to brief it. And, in fact, if we did brief it, we believe there's a very strong argument that we, and not they, would be entitled to fees. There's no finding here. In fact, none of the findings that are needed to allow fees under the Copyright Act were made by either the magistrate judge and certainly not by the district court judge who cites exactly one case, which is the Bluetooth case. And, as we know, that's not a copyright case. And, considering the benefit to the class, can the district court consider, and how do you value this board that was established? I know there's a $30,000 annual budget. I don't know how long it goes, but that board that was established, as well as the administrative costs for class certification. Can the district court include those in calculating the benefit to the class? So, the magistrate judge assigned a value to the artist advisory board of $30,000. The magistrate judge did this. Plaintiffs never put in any evidence. It's their burden to put in evidence on this matter, and they didn't put in any. So, I don't think it was really appropriate for the district judge, or the magistrate judge, to sort of launch a rescue mission for them. They're very experienced counsel. They know what they needed to do, and they didn't do it. As to the administrative costs, the only cases that allow the administrative costs to be added are cases where you have a common fund settlement. We don't have a common fund settlement. They haven't pointed to any case, and I don't know of any, where you allow the administrative costs to be added to the class relief. And the reason for that is, I believe, is that with a common fund, the class is paying the fees. It comes out of the class's portion. In a case like this one, where it's purely Lodestar, we would not only be paying the administrative costs, but we would then be paying the plaintiff's fees on these costs that we've already paid. So, I don't think it's proper in a case like this one, and no case has been submitted by either party that allows it in a non-common fund case. You want to save some rebuttals? I would like to, Your Honor. Can I make just one comment? Of course. Okay. In a nutshell, this case has become a class action defendant's nightmare, where the relief to the class was settled early. We wanted to get out of the case. We did everything we could to get out of the case, and it just kept poking along for the issue of fees. And with that, I will reserve my time. Thank you. Thank you. Good morning. May it please the Court. Reuben Ginsberg for Plaintiffs Appellees, David Lowery et al. The key to this appeal is the basis for the attorney fee award, the Copyright Act. The district court awarded fees under the Copyright Act. There's no requirement that a fee award under the Copyright Act be proportionate to the amount of recovery. Well, but counsel said you didn't even invoke the Copyright Act in your motion, and then when they objected to the magistrate's reference to it in their objections to the report and recommendation, you didn't dispute that objection. And I also say that findings that would be necessary to use the Copyright Act framework have not been made, what's your response to those points? First, they argue that we waived the issue by not requesting fees under the Copyright Act. But the district court, well, first the magistrate awarded fees under the Copyright Act. The district court adopted the recommendation by the magistrate also awarding fees under the Copyright Act. When the district court addresses an issue, when it considers an issue, the issue is not waived. So what's your response to the fact that, you know, findings that would be relevant or necessary under the Copyright Act weren't made? Were there findings, for example, on both of those? I have two responses to that. First, Your Honor, in Rapsody's opening brief, Rapsody never argues that we were not entitled to fees under the Copyright Act. That argument appears for the first time in the reply brief. An argument asserted for the first time in the reply brief is waived. So we haven't had an opportunity to address that argument. But that's because Rapsody's opening position is that the Copyright Act wasn't properly on the table. No, they don't argue that in their opening brief. What they do in their opening brief is they characterize the fee award as an award in a class action under Rule 23H without reference. They never cite Section 505 of the Copyright Act. They don't argue that this was not an award under the Copyright Act. Instead, they just ignore the Copyright Act. So that's not – I don't think you've answered my question about what about the findings that would be needed, because it's a different type of analysis under the Copyright Act, and you'd have to make findings as just relevant factors. And they argue that those haven't been made here. What's your response to that? Two parts to my argument, Your Honor, in responding to that question. First is they make that argument for the first time in the reply brief, so we haven't responded in writing to the argument. The authorities they cite for that argument don't support the argument that some express findings are needed on those points. Those findings are inferred when the court awards attorneys' fees. Was there a finding here on willfulness, for example? There was no express finding on willfulness, but the magistrate did state in the report and recommendation that Rapsody's litigation position was not objectively reasonable. And Rapsody's explanation for not complying with the licensing requirement under the Copyright Act is that it was not workable for a streaming service to do that. The magistrate characterized that as not objectively reasonable. Essentially what they say is that it was too much work for them to find, to verify that they have licenses for this material before putting it out because they want to put it out as quickly as possible. If I'm understanding correctly, you're asking us to basically infer that the magistrate judge and then by adoption the district court made findings that are not expressed. Is that correct? To the extent that express findings are required, or to the extent that particular findings are required, yes, the record supports that the magistrate intended to award fees under the Copyright Act, that the district court adopted that recommendation, and yes, that they did find plaintiffs to be the prevailing parties, and that they did find Rapsody to be in intentional violation of the Copyright Act. Okay. Taking that as your position, this is, of course, unusual in the sense of the result that the plaintiffs ultimately got versus the award made. Can you cite any case under the Copyright Act where an award of attorney fees is as disproportionate as this one, at least on its face, appears to be? No. What I can cite is the Supreme Court in Kurtzing, which is a Copyright Act case, discussing the broad leeway that the district court has in awarding fees under Section 505. There's no suggestion in Kurtzing that there's any sort of rule of proportionality. Kurtzing stated the statutory language, quote, eschews any precise rule or formula for awarding fees, end quote. Quote, Section 505 grants courts wide latitude to award attorney fees based on the totality of circumstances, and Kurtzing stated that fee awards under Section 505 should encourage lawsuits that promote the purposes of the Act. There's every indication that a fee award under Section 505, as with fee awards under other fee-shifting statutes, need not be proportional to the government. I'm not sure I agree with your analysis of the Supreme Court and Kurtzing in that case, but let's just say I do. This award seems so wildly disproportionate, particularly when you take into account, again, I don't know the ultimate truth one way or another, but as you know, opposing counsel is saying we settled this early on. They knew we settled it. They weren't going to get very much. It's kind of like a pile-on. Why should we, if you will, agree that such an award is appropriate even if it's awarded under the Copyright Act? Let's start with the standard of review, Your Honor, which is abuse of discretion. Deferential review of fee awards is appropriate because the district court has superior knowledge of the litigation, and to avoid frequent appellate review of what are essentially factual matters. We'll start with that. Do we even know how the district court came up with the surrogate? Mr. Chairman, there's almost no explanation at all in the district court's order, so we don't know what it exactly is. So shouldn't we at the very least vacate a remand for the district court to provide a better explanation for its decision? I believe the explanation is adequate, Your Honor. Let's start with the magistrate's report and recommendation, which is lengthy. The magistrate under the heading, whether fees are warranted under the Copyright Act, the magistrate states yes, fees are warranted under the Act, and states that a fee award under the Act would advance the purpose of the Act of enhancing public access to creative works by ensuring compensation for artists while allowing others to build on that work. The magistrate then proceeds to discuss the factors to consider in awarding fees under the Copyright Act, the curtsaying factors, starting with the objective reasonableness of the opposing party's litigating position and also considerations of compensation and deterrence and all the circumstances of the case. So the magistrate considered those factors under the Copyright Act and awarded fees. Rapsody's position, again, all along was that compliance with the licensing requirements was unworkable for a streaming service. The magistrate found that that was not an objectively reasonable position. This all goes to explaining the reason for the fee award. The magistrate also stated that there was a need for compensation because the individual recovery for copyright holders would be small. So you didn't claim at any point in seeking attorney's fees that you should be credited in any way with being an impetus for the larger settlement with the Publishers Association? I don't believe we did. So the magistrate took into consideration the curtsaying factors for a fee award under the Copyright Act. The magistrate then calculated the fee using the lodestar method, and Rapsody does not challenge the lodestar award. The magistrate did a percentage cross-check and applied a negative multiplier. Both sides moved for a de novo review by the district court. In the district court, Rapsody largely ignored the finding by the magistrate that a fee award was appropriate under the Copyright Act. They only mentioned in a footnote, which counsel has noted, that plans didn't request a fee under the Copyright Act. That was not a serious, meaningful attempt to challenge the magistrate's finding.  With some amendment, the district court rejected a percentage cross-check, stated that a percentage analysis was inapplicable, and rejected a multiplier, positive or negative. And on that point, the district court really didn't explain much of its decision to disagree with the magistrate judge.  In an effort to find a sum that adequately reimburses plaintiff's counsel for the work they performed, the court finds that no multiplier at all would be the most appropriate measure. And that's it. I mean, there's no reasoning of why it disagreed with the negative multipliers. I mean, with that, it feels like we need at least the district court to assess that and provide explanation. Your Honor, I think that's the reasoning. The current saying factors include considerations of compensation and deterrence. The purpose of a fee award in a Copyright Act case is to encourage counsel to pursue socially beneficial litigation. But the district court doesn't assess the rhapsody's argument that this lawsuit was completely unnecessary to vindicate their rights because you have this larger global settlement. Now you say, I feel like the district court should have addressed that point. And it just didn't. Well, the district court adopted the recommendation by the magistrate. But not for the restrictive multiplier. It agreed with the lodestar, so that's the point. The multiplier, negative multiplier, whether one should be applied, if so, what? I mean, there's just nothing there in the order. Respectfully, Your Honor, I think what's there is the court, the district court weighing differently on de novo review, weighing differently from the magistrate court. The value of considerations of compensation and deterrence, that is that there was some good to this copyright litigation. There was a copyright infringement. There was really no excuse for their not complying with the licensing laws. But with respect, this is all boilerplate with the district judge. They didn't really analyze it. And I think I'm troubled by the same thing that my colleague is, that he didn't really say why he didn't adopt the negative multiplier. That had to do with a lot of money. He didn't say why. You know, it's wonderful to deter all kinds of things, but he didn't say, in this case, this is what happened. He didn't take into account anything about the earlier settlement and so on. Isn't that something we can take into account, even under the current song and factors? Take into account, Your Honor, but I don't believe that it's an abuse of discretion. When the court relies on the recommendation by the magistrate and differs only with respect to whether counsel are entitled to the full Lodestar for pursuing this litigation, again, Rhapsody doesn't challenge the Lodestar. The explanation for the district court's difference of opinion is that the district court sees no reason to compensate attorneys any less than the work that they put in. For the hours at the billing rate that is not in dispute, it's only a question of whether they should be fully compensated for this litigation or not. Let me ask you this. It's on the record, and you can't really give me an answer, but you all are good lawyers. You were told what they, at least as far as they were concerned, everybody had settled. Why did you continue to bill all these hours, do all these things, essentially running up the fees? It wasn't running up the fees, Your Honor. There was an MOU early on in May 2017. Then the party spent some time hashing out a settlement agreement, including getting financial information from Rhapsody. That information was not forthcoming. We had to go back to court in order to get a court order for a site visit when we could ask questions to find out about their finances. And then involve millions of dollars' worth of time to do that? That wasn't the only part. The two parties couldn't come together on a settlement agreement for some period of time. This was all taken into consideration by the magistrate and the Rhapsody and the district court with respect to the Lewitt Star. That is, whether the time was reasonable, whether the rates were reasonable, the Lewitt Star is not being challenged. Right, I understand that. Okay. So I do want to address— Your time is almost up here. Six seconds. My colleague either has additional questions. I'm sure you can tell us a lot more. You're a fine lawyer, so we appreciate your argument. We thank you. Thank you, Your Honor. Thank you, Your Honors. I know my time is brief, so I'm going to try and make five quick points and one fervent request. The only basis that plaintiffs moved for attorney's fees was under Rule 23H. They never mentioned the Copyright Act. You can look at Docket 208 at 9, which is their attorney's fees motion, where they make it entirely clear. Second, I think the fact that they are flipping over now to the Copyright Act as their savior is really a tacit admission that this fee cannot be affirmed under the rules for class actions generally under Rule 23H. Third, there were no findings about, for example, prevailing party by the magistrate judge or the district court, and the law is quite clear that you cannot just award fees under the Copyright Act as a matter of course. You have to make specific findings, and those were never made. The magistrate judge does, like Kurt's saying, it goes through some of the factors there. She identifies with the factors, and then begins to apply them in the case. That's not a substantive analysis under the Copyright Act. Not enough. She went through one. She mentioned one factor, which was objective reasonableness, but the most important factor is prevailing party, and there was no finding that they're the prevailing party, and under the Copyright Act, it isn't even clear they are the prevailing party, and it isn't clear they're the prevailing party even under the settlement agreement where we got relief that was at least as valuable as the relief that they got for the class. With respect to the issue of proportionality. How would you be the prevailing party? Well, there are cases that say that where the relief is de minimis, that under the Copyright Act, that the plaintiff or defendant need not be considered the prevailing party, but also we got affirmative relief under the settlement agreement in the form of going forward licenses. So, I think we would have a very strong case that we were the prevailing party, but there's certainly no finding that plaintiffs. What's your response to their citation of the Turchin case for the proposition that under the Copyright Act, we don't have to have the kind of strict proportionality you're saying applies in the class action context? I would refer the court to this court's decision last year in the Lenard-Troys case, which is in our brief, our reply brief, because that's our first opportunity to address the Copyright Act. And in the Lenard-Troys case, the court actually applied the Hensley Bluetooth analysis and said, you know, you need to look at the relief to the class. That's the number one consideration, even in a Copyright Act case. And I know my time is up. If I can make my one firm request. Go ahead, make your firm request. Thank you. Judge Lee, you suggested that maybe we should vacate this to ask the court, the district court, for a better explanation. And I am begging you not to do that, that if you vacate, to please give the court specific instructions on what needs to be done so that this case can finally end, that we can get an award that is within the bounds of the law, and we can finally fold our tent on this one. Thank you very much. Thanks to both counsel for your fine arguments. We appreciate it. It's an interesting case. The case just argued is submitted, and the court stands adjourned for the week.
judges: SMITH, COLLINS, LEE